UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LESLY LYNNENE LEWIS,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. EDCV 14-01326 (GJS)<br><br>MEMORANDUM OPINION AND ORDER |

## I.　　PROCEEDINGS

Plaintiff Lesly Lynnene Lewis ("Plaintiff") filed a complaint seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed consents to proceed before the undersigned United States Magistrate Judge, and motions addressing disputed issues in the case (Plaintiff's Brief in Support of Complaint ("Plaintiff's Brief") and Defendant's Opposition to Plaintiff's Brief in Support of Complaint ("Defendant's Opposition")). The Court has taken the motions under submission without oral argument.

/ / /

/ / /

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff asserts disability since August 1, 2010, based primarily on basilar migraine headaches, speech problems, high blood pressure, high cholesterol, back pain, depression, memory problems, vertigo, sleep apnea, and arm weakness. (Administrative Record ("AR") 12-13, 33-41, 156, 174).

After a hearing, an Administrative Law Judge ("ALJ") applied the five-step sequential evaluation process to find Plaintiff not disabled. *See* 20 C.F.R. § 404.1520(b)-(g)(1).[1] At step one, the ALJ found that Plaintiff has not engaged in substantial gainful employment since her alleged onset date. (AR 12). At step two, the ALJ found that Plaintiff had the following severe impairments: history of transient ischemic attack; obstructive sleep apnea; basilar/complex migraine headaches; high cholesterol; arthritis in the back; bipolar 1 disorder, mixed type of moderate degree, nonpsychotic; and attention deficit hyperactivity disorder ("ADHD"). (AR 12). At step three, the ALJ found that Plaintiff's impairments, either singly or in combination, do not meet or equal the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 13). The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to

---

[1] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 404.1520. The steps are as follows: (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two; (2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four; (4) Is the claimant capable of performing her past work? If so, the claimant is found not disabled. If not, proceed to step five; (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. 20 C.F.R. § 404.1520(b)-(g)(1).

perform a range of light work.[2] (AR 14 (citing 20 C.F.R. § 404.1567(b))). At step four, the ALJ found that Plaintiff is not capable of performing her past relevant work. (AR 21-22). At step five, the ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the economy. (AR 22-23).

The Appeals Council denied Plaintiff's request for review. (AR 1-3).

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

### IV. DISCUSSION

Plaintiff contends that the ALJ: (1) rejected the examining neurologist's opinion without stating legally sufficient reasons for doing so; (2) erred in the assessment of Plaintiff's credibility; and (3) erred in finding that Plaintiff is capable of performing other work. (Plaintiff's Brief at 4-20). As set forth below,

---

[2] Specifically, the ALJ found that Plaintiff has the ability to: balance, stoop, kneel, crouch, crawl, and climb ramps and stairs occasionally; understand, remember, and carry out simple job instructions; maintain attention and concentration to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements; interact with co-workers, supervisors, and the general public frequently; and work in an environment with occasional changes to the work setting and occasional work-related decision making. (AR 14). The ALJ further found that Plaintiff cannot climb ladders, ropes, or scaffolds, or perform work that would require directing others, abstract thought, or planning. (AR 14).

3

the Court agrees with Plaintiff, in part, and remands the matter for further proceedings.

### A. Examining Neurologist's Opinion

Plaintiff contends the ALJ erroneously rejected the opinion of the examining neurologist, Dr. Marshall Handleman. Specifically, Plaintiff argues that the ALJ improperly discounted Dr. Handleman's findings that Plaintiff is limited to "occasional" use of her left hand for fine and gross manipulative movements, and erred in finding that her left upper extremity impairment was not severe. (Plaintiff's Brief 4-8, 10; AR 322). Plaintiff further argues that the ALJ improperly rejected Dr. Handleman's findings that Plaintiff has moderate limitations in the ability to perform "work activities on a consistent basis without special or additional supervision," and moderate limitations in the ability to complete "a normal work day or work week." (Plaintiff's Brief 10-11; AR 329).

An ALJ must provide clear and convincing reasons supported by substantial evidence to reject the uncontradicted opinion of an examining physician, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), and specific and legitimate reasons supported by substantial evidence to reject the contradicted opinion of an examining physician, *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence to justify the rejection of an examining or treating physician. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n. 2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999).

### 1. Left Upper Extremity

In August 2011, Dr. Handleman conducted a neurological evaluation of Plaintiff. (AR 318-22). Plaintiff reported, among other things, weakness in her left arm. (AR 318). Following an examination, Dr. Handleman noted slight weakness, hyperreflexia, and a decrease in finger-to-nose movements and sensation in Plaintiff's left upper extremity, as compared to her right upper

extremity. (AR 321). Dr. Handleman opined that Plaintiff was limited to "occasional" use of her left hand for fine and gross manipulative movements. (AR 322).

The state agency medical consultants who reviewed Plaintiff's medical records agreed with Dr. Handleman's opinion and limited Plaintiff to occasional use of her left upper extremity for gross manipulation (handling) and fine manipulation (fingering). (AR 55, 69-70, 345).

The ALJ found that Plaintiff's left upper extremity impairment was not severe. (AR 13). In support of this step two determination, the ALJ improperly rejected Dr. Handleman's assessment of Plaintiff's hand limitations. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Handleman's opinion because "the record does not support any manipulative limitations with the left upper extremity." (AR 19). The ALJ mischaracterized the medical evidence. Dr. Handleman's examination report reflects that Plaintiff had a decrease in strength, hyperreflexia, impaired ability perform do finger-to-nose movements, and a decrease in sensation in Plaintiff's left upper extremity. (AR 321). Dr. Handleman also noted a decrease in grip strength on the left side. (AR 320). Thus, the medical record contains objective clinical findings consistent with Dr. Handleman's opinion.

Second, the ALJ discounted Dr. Handleman's opinion because it was based on a one-time examination, and a review of only a limited amount of treatment records. (AR 19). However, the regulations clearly state that an ALJ must consider the opinions of treating, examining, and state agency physicians. *See* 20 C.F.R. § 404.1527(c), (e); *Lester*, 81 F.3d at 830. That a physician only examined a claimant on one occasion is not a legitimate reason to reject the opinion, but rather is a factor that can be considered in assigning weight. *Lester*, 81 F.3d at 830.

Third, the ALJ relied on asserted inconsistencies between Plaintiff's

5

testimony and Dr. Handleman's opinion. (AR 19). Specifically, the ALJ noted that Plaintiff testified that "she had no limitations with respect to the left upper extremity, including she could lift a gallon of milk on the left and right side." (AR 19). At the hearing, when Plaintiff was first asked whether she had any arm impairments or whether she had symptoms in both arms, Plaintiff responded, "I don't know." (AR 40-41). Shortly thereafter, however, Plaintiff testified about problems pressing buttons, as well as arm weakness. (AR 40-41). Thus, the ALJ did not accurately represent Plaintiff's testimony. And, although Plaintiff admitted that she is able lift a gallon of milk, her testimony does not indicate that she is able to engage in gross or fine manipulation on more than occasional basis. Thus, even if Plaintiff's testimony describing her left upper extremity impairment was somewhat equivocal, it did not provide a legitimate basis for rejecting Dr. Handleman's findings on examination.

     Fourth, the ALJ noted that Plaintiff had not reported any left upper extremity complaints to any physician and had not received treatment for the condition. (AR 13, 19). However, contrary to the ALJ's finding, Dr. Handleman's report clearly documents Plaintiff's complaints of upper arm weakness. (AR 318). Further, while Plaintiff's medical records do not document treatment for her left arm condition, the ALJ did not give Plaintiff an opportunity to explain her failure to seek treatment. (AR 41); *see* Social Security Ruling ("SSR") 96-7p ("the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment"). At the hearing, Plaintiff testified that because she had lost her medical insurance in 2010, she was directed to seek medical treatment at the hospital emergency room. (AR 35-36). Later, when asked whether she had reported the weakness in her arms to her doctors, Plaintiff

responded, "No.  That place is busy over there anyway, they don't -- ."  (AR 41).  Before Plaintiff could finish her answer, the ALJ began asking Plaintiff about her other impairments.  (AR 41).  Thus, Plaintiff's failure to seek treatment for her upper arm condition was not a legally sufficient basis for rejecting Dr. Handleman's opinion.  SSR 96-7p.

By improperly discounting Dr. Handleman's opinion regarding Plaintiff's left hand impairment, the ALJ also erred in finding Plaintiff's impairment not severe.  The finding of severity at step two is a de minimis screening device to dispose of groundless complaints.  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'").  The ALJ's failure to properly analyze Plaintiff's upper extremity impairment at step two may have also resulted in errors at subsequent steps of the disability analysis.  *See* 20 C.F.R. § 404.1520.

Defendant argues that any error at step two was harmless because the vocational expert ("VE") testified at the administrative hearing that a person with the hand limitations assessed by Dr. Handleman could still perform other jobs.  (Defendant's Opposition at 4-5; AR 44-45); *see Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)  (an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination"); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to list an impairment as severe at step two can be deemed harmless where limitations are considered at step four); *Burch v. Barnhart*, 400 F.3d 676, 682-84 (9th Cir. 2005)  (finding failure to list obesity as severe at step two harmless where ALJ considered any functional limitations imposed by obesity at step five).  Specifically, Defendant notes that the VE testified that a person with Plaintiff's RFC and the assessed fine and gross manipulative limitations could perform the jobs of cleaner, Dictionary of Occupational Titles ("DOT") 323.687-014 and office helper, DOT 239.567-010, in

response to the ALJ's second hypothetical question. (Defendant's Opposition at 4-5; AR 44-45). The ALJ, however, did not adopt the VE's testimony in response to the second hypothetical question. Rather, the ALJ based the step five determination of nondisability on the VE's response to the ALJ's first hypothetical question, which did not include any upper extremity limitations. (AR 22-23, 43-44). Thus, the VE's testimony does not provide substantial evidence for the ALJ's finding of nondisability nor does it render the ALJ's error at step two harmless. *See Molina*, 674 F.3d at 1115.

Accordingly, this case should be remanded for reconsideration of the medical evidence regarding Plaintiff's left upper extremity impairment.[3]

### 2. Plaintiff's Mental Impairments

In October 2011, Dr. Handleman conducted a complete psychiatric evaluation of Plaintiff. (AR 325-30). Dr. Handleman diagnosed Plaintiff with bipolar disorder and ADHD, and assigned a Global Assessment of Functioning ("GAF") score of 45, indicating serious symptoms or difficulty functioning. (AR 328-29); Diagnostic and Statistical Manual of Mental Disorders ( DSM-IV) (4th ed., 1994). Dr. Handleman found that Plaintiff had "mild" limitations in the following: performing simple and repetitive tasks; accepting instructions from supervisors; interacting with coworkers and with the public; and handling the usual stressors, changes and demands of gainful employment. (AR 329). Dr. Handleman found that Plaintiff has "moderate" limitations in the following:

---

[3] Plaintiff further asserts that she is unable to perform the jobs identified by the VE at the hearing -- cleaner, office helper, and laundry sorter -- because those jobs all require frequent handling and fingering, according to the DOT. (Plaintiff's Brief at 8, 17). Thus, a potential conflict exists between the VE's testimony and the DOT. On remand, if the ALJ develops the vocational record with additional VE testimony, the ALJ should explore any potential conflicts between the VE's testimony and the DOT, to ensure that the demands of any identified jobs are consistent with Plaintiff's abilities.

concentration, persistence and pace; completing detailed and complex tasks; performing work activities on a consistent basis without special or additional supervision; and completing a normal work day or work week.  (AR 329).

The ALJ gave "significant weight" to Dr. Handleman's opinion regarding Plaintiff's mental limitations, noting that it was "generally supported by the objective findings from the consultative examination and consistent with the record as a whole," except for the GAF score assessed.  (AR 20-21).  The ALJ determined that Plaintiff has the RFC to:  "understand, remember, and carry out simple job instructions;" perform "simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements;" have "frequent interaction with co-workers, supervisors, and the general public;" and "work in an environment with occasional changes to the work setting and occasional work-related decision making."  (AR 14).  The ALJ further found that Plaintiff cannot "perform work that would require directing others, abstract thought, or planning."  (AR 14).

The ALJ also accorded "significant weight" to the opinions of the state agency reviewing physicians, who found that that Plaintiff was capable of carrying out short and simple instructions.  (AR 56-57, 71-72).

Plaintiff claims that the ALJ improperly rejected Dr. Handleman's opinion that Plaintiff has "moderate" limitations in the ability to:  (1) perform work activities on a consistent basis without special or additional supervision; and (2) complete a workday or work week. (Plaintiff's Brief at 11; AR 329).  In contrast, Defendant argues that the ALJ properly accounted for these limitations in Plaintiff's RFC, which included limitations to simple, repetitive, routine tasks that would not require work directing others, abstract thought or planning, or fast-paced work. (Defendant's Opposition at 6).

Plaintiff has failed to demonstrate any error by the ALJ in evaluating Dr. Handleman's opinion with respect to Plaintiff's mental impairments.  First, the ALJ was not required to individually reference each limitation noted in Dr.

Handleman's report. *See*, *e.g.*, *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (the ALJ does not need to discuss every piece of evidence when interpreting the record). Second, the ALJ's RFC, which included a restriction for simple, routine, and repetitive tasks, is consistent with the medical evidence. *See, e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) ("assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony"). Dr. Handleman found that Plaintiff was only "mildly limited" in the ability to perform simple and repetitive tasks, despite moderate limitations in performing work activities on a consistent basis without special or additional supervision, completing a normal work day or work week, and concentration, persistence and pace. (AR 329). The opinions of the state agency physicians support this conclusion as well. (AR 56-57, 71-72). Consistent with the medical evidence, the ALJ appropriately translated Plaintiff's moderate mental limitations into a restriction to "simple, routine, repetitive tasks." *See Stubbs-Danielson*, 539 F.3d at 1173 (an ALJ's limitation to "simple, routine, repetitive" work sufficiently accommodated the examining and reviewing physicians' findings that the claimant had a "slow pace" and "several moderate limitations in other mental areas"); *see also Sabin v. Astrue*, 337 Fed. Appx. 617, 620-21 (9th Cir. 2009) (finding ALJ properly assessed medical evidence in determining that despite moderate difficulties as to concentration, persistence, or pace, claimant could perform simple and repetitive tasks on a consistent basis); *McLain v. Astrue*, No. SACV 10-1108 JC, 2011 WL 2174895, at *6 (C.D. Cal. June 3, 2011) ("[m]oderate mental functional limitations . . . are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks"); *Rodriquez v. Colvin*, No. 1:13-CV-01716-SKO, 2015 WL 1237302, at *6 (E.D. Cal. Mar 17, 2015) (finding that "a moderate limitation in the ability to complete a workday or workweek without interruption is consistent with and properly captured by a

limitation to simple repetitive tasks"); *Bickford v. Astrue*, Civil No. 09-833-KI, 2010 WL 4220531, at *11 (D. Or. Oct.19, 2010) ( "[S]o long as the ALJ's decision is supported by medical evidence, a limitation to simple, repetitive work can account for moderate difficulties in concentration, persistence or pace.") .

Accordingly, the Court concludes on this record that the ALJ's assessment of Plaintiff's RFC, with respect to Plaintiff's mental impairment, was supported by substantial evidence.[4]

/ / /

/ / /

/ / /

---

[4] Further, the Court notes that the ALJ did not err in giving little weight to the GAF score assessed by Dr. Handleman. (*See* Plaintiff's Brief at 11). First, GAF scores, standing alone, are not determinative of mental disability for purposes of social security claims. *See* 65 Fed. Reg. 50746, 50764-65 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings."); *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). Second, the ALJ reasonably found that the assessed GAF score was inconsistent with Dr. Handleman's findings that Plaintiff had no more than moderate mental limitations. (AR 21); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Indeed, Plaintiff's mental status examination revealed largely normal findings. (AR 327-28). Plaintiff had a "depressed and anxious" mood, an affect that was congruent with her mood, and a spastic quality to her speech with slight increase in rate, but was nonetheless cooperative, and had normal psychomotor activity, linear goal directed thought processes, and common sense understandings. (AR 327-28). Plaintiff was also oriented to person, place, time and situation, could register three objects immediately after one minute, calculate serial threes, describe similarities and analyze simple proverbs, spell "world" backward, and name various political figures and the capital of California. (AR 328). Thus, the ALJ's consideration of Plaintiff's GAF score is not grounds for reversal or remand.

## V.    CONCLUSION AND ORDER[5]

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

The Court finds that remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors. *See INS v. Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353, 154 L.Ed.2d 272 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, "except in rare circumstances"); *Treichler v. Commissioner*, 775 F.3d 1090, 1101 (9th Cir. 2014) (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved"); *Harman*, 211 F.3d at 1180-81. The Court has found that the ALJ's consideration of Dr. Handleman's opinion with respect to Plaintiff's upper extremity impairment and determination at step two of the sequential evaluation process was not supported by substantial evidence. Thus, remand is appropriate to allow the Commissioner to continue the sequential

---

[5] The Court need not, and has not adjudicated Plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

evaluation process starting at step three.

IT IS THEREFORE ORDERED that Judgment be entered reversing the Commissioner's decision and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion and Order.

DATED: July 09, 2015      _____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE